Nott, J.,
delivered the opinion of the court:
This is a claim for $12,375. It arose on the 17th November, 1867. The place was about four miles above the town of Fort Collins, in Larimer County, Colo. The depredation was the taking of a herd of ninety-three horses, and the depredators were supposed to be thirteen Arapahoes or Cheyennes. The claimant has never presented this claim to the Interior Department nor to Congress nor to any officer or agent of the Government, and the first intimation which the Government or the defendant Indians had of its existence was when the petition was filed in this court on the 16th April, 1891. It is supported only by the testimony of the claimant; himself and one witness. Since the claimant testified, he has filed his own ex parte affidavit, stating that the witness above referred to “is the only person now living with whom I am acquainted who is familiar witli the theft complained of,” and that of the thirteen persons who followed the Indians at the time they took the horses he does not know the whereabouts of any, except the witness, and has used every endeavor to discover them, but can secure no information, except that they are dead.
In the brief of the claimant’s counsel it is maintained that the failure on the part of the claimant to produce further testimony is fully .and satisfactorily explained by his affidavit, and—
“By reason of the further fact that the depredation com-I>lained of occurred nearly twenty-five years ago in what was then a sparsely inhabited county, settled by a roving class, who advanced westward with the march of emigration, ever seeking new fields of exploit and adventure, and hence it is not the least strange that the claimant, after the lapse of so many years, was unable to secure further or better testimony.”
At the time this depredation was eomifiitted, the Aet 30th June, 1834 (4 Stat. L., p. 729, § 17), provided, in the case of Indian depredations, that any citizen or inhabitant “ may m ake application to the proper superintendent, agent, or subagent, who, upon being furnished with the necessary documents and proofs, shall, under the direction of the President, make application to the nation or tribe to which said Indian or Indians shall belong for satisfaction.” If the nation or tribe refused to make satisfaction within twelve months it became the duty “ of such superintendent, agent, or subagent to make returns *114 of his doings to the Commissioner of Indian Affairs.” But to this there was a proviso: “That unless such claims shall be presented within three years after the commission of the injury the same shall be barred.”
Within five years after the depredation there was also enacted the Act 29th May, 1872 (17 Stat. L., p. 165, § 7), which made it the duty of the Secretary of the Interior “ to prepare and cause to be published such rules and regulations as he may deem necessary or proper, prescribing the manner of presenting claims arising under existing laws or treaty stipulations for compensation for depredations,” which he was required carefully to investigate. In 1880 a statute extended the investigation to claims which might be barred: “And the examination and report shall include claims, if any, barred by statute, such facts to be stated in the report.” Act 15th May, 1886 (24 Stat. L., p. 44). The Act 2d March, 1887 (24 Stat. L., p. 464), contained a like provision.
The Indian Depredation Act, 3d March, 1891 (Stat. L., p. 851, § 2), provides — r
“That all questions of limitations as to time and manner of presenting claims are hereby waived, and no claims shall be excluded from the jurisdiction of the court because not heretofore presented to tiie Secretary of the Interior or other officer or Department of the Government.”
But appended to this is a proviso, which limits the above right in cases like the present to claims which have accrued on or subsequent to July 1,1865; and a further proviso restricts the right of action in this court to a period of three years after the passage of the act.
The law, therefore, as it stands attaches no legal presumption of payment or ^abandonment to the claim. But the fact that the defendants have again and again notified the claimant to present his claim for the scrutiny and investigation of the Interior Department, and that he has again and again wholly neglected to do so, suggests moral presumptions or considerations which may very well be taken into account when a court is dealing with a demand of this magnitude.
There are no precedents to guide the court, for it is believed that never before have parties been allowed to disregard their legal obligations to present their claims within a reasonable time to the proper officer, Department, or agent of the G-over- *115 ernment charged with tbeir investigation, and then assert a right of action for the first time more than twenty-eight years, it may be, after the event, and that event deeming in a region of the country where it is now practically impossible for the defendants to procure evidence in rebuttal. Everything here depends upon the party in interest and a single witness — the ownership of the property, the possession of the property, the number of the horses, their value, and the fact of the depredation. It is manifest that in such cases a court should proceed with great caution, and.that it should not allow such testimony wholly unsupported to control a decision, though the witnesses may be neither contradicted nor impeached.
The court has no reason in this particular case, other than the lapse of time and the inaction of the claimant, to discredit the witnesses or suspect the claim; yet it presents the question whether a party guilty of such laches should recover such an amount upon such evidence; and the court is Of the opinion that the presumptions of fact which he has allowed to gather upon and cloud his right of action are not overcome by the evidence which he hás produced.
The judgment of the court is that the petition be dismissed.