Howry, J.,
delivered the opinion of the court:
The questions presented arise on the motion of the claimant to amend the findings to be transmitted to Congress under the fourteenth section of the act of March 3, 1887, known as the “Tucker Act ” (24 Stat., 505, c. 359). After full argument and a more exhaustive analysis of the whole record, results appear in the substituted findings from which it will be seen that there is too much improbability growing out of inconsistencies and contradictions in the testimony for the court to say that the case is proven.
It is argued with much earnestness that the author of any intellectual production has the exclusive right to reproduce or make copies of it unless and until by publication without copyright the author has given his production to the world; This is true, and the court is of opinion that this right would exist with respect to charts and maps. There is authority that need not be cited to show that such right is of an incorporeal character separate from the mechanical means of *407 reproducing the wort. But that is not the question in this case, but rather whether the claimant has overthrown the record evidence upon which the Government acted in purchasing the entire outfit from those in rightful possession of all the property and who were settled with as the rightful owners of the. copyrights as well as the plates. The subject-matter of the correspondence related to “ the Boschke map ” and its cost to the persons whom the Secretary of War recognized at the time of the settlement as “ the present proprietors.” They asked $12,000 for the property, including the copyright. Indorsements on file at the time of the settlement relate to the patriotism and reliability of some of the persons claiming to be owners. The experts whom the record shows made estimates assessed the valuation of the plates and cost of execution and the Secretary of War settled with the persons from whom the original map and plates were taken, not only upon testimony relating to the character of the persons claiming to be owners, but upon declarations under oath that they were sole proprietors of the copyright as well as owners of the plates and such engravings as they had struck off from the plates in their possession at the time of the seizure.
Blagdon, Blanchard, Mohun, Sweeny, and McClelland are all dead. They and each of them declared upon oath preceding the settlement that they were the “ lawful owners of the copyright of said map, and obtained possession of the plates in the months of January and March, 1860?
The claimant admits that the original map never had any market value after its completion, and it may be that when a committee in Congress refused to take any interest in acquiring the use of the map the claimant attached no importance to the copyright. This, however, is unimportant, as we must come back to the proposition that executive authority paid for what it needed on proof contemporaneous with the settlement and preceding it, covering evidences of ownership different from that of the claimant, while the court is asked on the uncorroborated testimony of the interested party nearly a half century later to find the ownership to be in him. If the court undertook to do so, then the five men who declared the copyright to be in them presented a false, fraudulent, or fictitious claim against the Government, contrary to *408 the provisions of section 5438 of the Revised Statutes. It ought to take more than one interested witness to put a stigma upon the memory of men who are no longer living to tell a different story, as their characters are presumably as good as the character of the claimant.
The lapse of time, the inaction of the claimant, the presumptions of fact which he has allowed to gather upon and cloud his right, if he ever had any, are not overcome by the evidence which he has produced. (Stone v. United States, 29 C. Cls. R., 111; 164 U. S., 382.)